**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA, )
)
Plaintiff/Respondent, )
)
v. ) Case No. 18-CR-00152-GKF
) 22-CV-00049-GKF-JFJ
MELVIN LOUIS BAILEY, III, )
)
Defendant/Petitioner. )

**OPINION AND ORDER**

This matter comes before the court on the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 70] and the Amended Motion to Vacate, Set Aside, or Correct a Sentence Under 28 U.S.C. § 2255 [Doc. 104] of defendant/petitioner Melvin Louis Bailey, III, as well as the Motion to Dismiss Defendant's Untimely § 2255 Motion [Doc. 74] of plaintiff/respondent United States of America.

## I. Background/Procedural History

On July 12, 2018, a grand jury returned an Indictment charging Mr. Bailey with four counts of Obstruct, Delay, and Affect Commerce By Robbery pursuant to 18 U.S.C. § 1951 ("Hobbs Act Robbery"), four counts of Carry, Use, and Brandish a Firearm During and in Relation to a Crime of Violence pursuant to 18 U.S.C. § 924(c)(1)(A)(ii), and one count of Hobbs Act Conspiracy pursuant to 18 U.S.C. § 1951(a). [Doc. 3]. Specifically, Count One charged Mr. Bailey with Hobbs Act Robbery related to a April 28, 2015 robbery of the Walgreens, located at 3112 South Harvard Avenue, Tulsa, Oklahoma ("Walgreens Store"). Count Two charged Mr. Bailey with a § 924(c) offense related to that April 28 robbery. [*Id.* at pp. 1-3]. Count Three charged Mr. Bailey with Hobbs Act Robbery related to a July 20, 2017 robbery of the Walgreens Store, and

Count Four charged Mr. Bailey with a § 924(c) offense related to that July 20 robbery. [*Id.* at pp. 4-5]. Count Five charged Mr. Bailey with Hobbs Act Robbery related to the December 1, 2017 robbery of the Walgreens Store, and Count Six charged Mr. Bailey with a § 924(c) offense related to that December 1 robbery. [*Id.* at pp. 6-7]. Count Seven charged Mr. Bailey with one count of Hobbs Act Conspiracy, Count Eight charged Mr. Bailey with Hobbs Act Robbery, and Count Nine charged Mr. Bailey with a § 924(c) offense, all related to a January 6, 2018 robbery of the Walgreens Store. [*Id.* at pp. 8-11].

A two-day jury trial began on March 25, 2019. [Doc. 38 to Doc. 42]. Counsel did not object to the court's proposed final jury instructions. [Doc. 42]. On March 26, 2019, the jury returned a verdict finding Mr. Bailey guilty as to Counts One, Two, Three, Four, Seven, Eight, and Nine of the Indictment. [Doc. 45]. The jury also found that Mr. Bailey had brandished a firearm as to Counts Two, Four, and Nine. The jury acquitted Mr. Bailey of Counts Five and Six of the Indictment. [*Id.*].

In July of 2019, the court sentenced Mr. Bailey to a total term of imprisonment of 396 months, consisting of 144 months as to each of Counts One, Three, Seven, and Eight to run concurrently, each with the other, and 84 months as to each of Counts Two, Four, and Nine to run consecutively to each other and consecutively to Counts One, Three, Seven, and Eight. [Doc. 49].

Mr. Bailey appealed to the Tenth Circuit Court of Appeals. [Doc. 50]. There, Mr. Bailey raised a single issue—the sufficiency of the evidence as to Count Nine, as the charged alleged that Mr. Bailey brandished the weapon, but Mr. Bailey did not personally commit the charged offense. On August 28, 2020, the Tenth Circuit affirmed the Judgment and Sentence. [Doc. 67; Doc. 68].

On January 27, 2022, Mr. Bailey filed the motion collaterally attacking the Judgment and Sentence pursuant to 28 U.S.C. § 2255. [Doc. 70]. In the motion, Mr. Bailey raised three grounds for relief. First, Mr. Bailey asserted that certain statements made by him to law enforcement on January 29, 2018 should have been suppressed because "the fact that [he] was aware or was in sober mind state was never proven." [*Id.* at p. 3]. Second, Mr. Bailey argued that his sentence was illegal because Hobbs Act Robbery is not a "crime of violence." [*Id.* at p. 6]. Mr. Bailey's third ground for relief stated only, "Illegal Sentence," and included no substance. [*Id.* at p. 8]. In response, the government filed the Motion to Dismiss Defendant's Untimely § 2255 Motion. [Doc. 74].

On March 30, 2023, Mr. Bailey filed a Motion to Amend § 2255 Motion. [Doc. 95]. On April 7, 2023, Mr. Bailey filed a second Motion to Amend § 2255 Motion. [Doc. 96].

In an April 10, 2023 Order, the court dismissed the first and third grounds for relief included in Mr. Bailey's § 2255 motion as untimely. Alternatively, the court concluded that the first and third grounds for relief were denied as the first ground was procedurally barred and the third ground lacked merit. [Doc. 97, p. 11]. However, the court liberally construed Mr. Bailey's motions to amend as seeking to amend his § 2255 petition to challenge his § 924(c) convictions and the consecutive 84-month sentences imposed for those convictions pursuant to the Supreme Court's June 2022 decision in *United States v. Taylor*, 596 U.S. 845 (2022). [*Id.* at pp. 10-11]. Thus, given the pending motions to amend, the court reserved ruling on Mr. Bailey's second ground for relief. [*Id.*].

The government did not oppose Mr. Bailey's motions to amend [Doc. 98] and, on May 1, 2023, the court granted Mr. Bailey leave to amend his § 2255 petition to challenge his § 924(c)

convictions and related 84-month sentences under *Taylor*. [Doc. 99]. On May 2, 2023, the court directed the Federal Public Defender to appoint counsel for Mr. Bailey and, on May 10, 2023, an Assistant Federal Public Defender entered his appearance on behalf of Mr. Bailey. [Doc. 101; Doc. 102].

Mr. Bailey subsequently filed the Amended Motion to Vacate, Set Aside, or Correct a Sentence Under 28 U.S.C. § 2255. [Doc. 104]. The government responded in opposition [Doc. 108] and, with the court's leave, Mr. Bailey filed a reply [Doc. 112].

**II. Procedural Default**

The government first argues that Mr. Bailey has procedurally defaulted his § 2255 claim as to his § 924(c) convictions because he did not raise the issue on direct appeal.[1] [Doc. 108, pp. 5-13].

It is well-established that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). That is, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate . . . 'cause' *and* actual 'prejudice.'"[2] *Bousley v. United States*, 523 U.S. 614, 622 (1998) (emphasis added) (quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986)). "The procedural-default rule is

[1] In the motion to dismiss Mr. Bailey's original § 2255 motion, the government also argued that Mr. Bailey's motion was untimely. [Doc. 74]. However, in its response to Mr. Bailey's motion to amend, the government conceded that Mr. Bailey's claim under *Taylor* was timely. [Doc. 98, p. 1 n.1]. Thus, the government's motion to dismiss as to Mr. Bailey's second ground for relief is moot.

[2] A defendant may also raise a procedurally defaulted claim where he demonstrates that he is "actually innocent." *Bousley,* 523 U.S. at 622. However, Mr. Bailey does not contend that he is actually innocent.

neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro,* 538 U.S. at 504.

Mr. Bailey concedes that he did not raise at trial or on direct appeal whether Hobbs Act Robbery (either attempted or completed) constitutes a "crime of violence" and therefore a valid predicate offense under 18 U.S.C. § 924(c). *See* [Doc. 104, p. 8]. This court has previously concluded that the fact that the pre-*Taylor* "state of the law at the time of [his] appeal[] did not offer a reasonable basis upon which to challenge the [conviction]" constituted cause for failing to object to attempted Hobbs Act Robbery as a § 924(c) predicate offense. *See United States v. Wilson,* No. 12-CR-197-GKF (N.D. Okla. Jan. 31, 2023), [Doc. 287, p. 5]. The court sees no reason to revisit its prior conclusion and therefore turns to the "actual prejudice" requirement.

"'Actual prejudice' means 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to [defendant's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *United States v. Bailey*, 286 F.3d 1219, 1223 (10th Cir. 2002) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also United States v. Snyder*, 871 F.3d 1122, 1127-28 (10th Cir. 2017). The U.S. Supreme Court has

> summarized the degree of prejudice . . . required [for] a prisoner to show before obtaining collateral relief for errors in the jury charge as "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even universally condemned."

*Frady,* 456 U.S. at 169 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). However, "[a] sentence that is not authorized by law is certainly an 'actual and substantial disadvantage' of 'constitutional dimensions.'" *Snyder*, 871 F.3d at 1128 (quoting *Frady*, 456 U.S. at 170).

If Mr. Bailey is correct regarding his *Taylor* claim, his § 924(c) convictions would be invalid. Because an unlawful sentence constitutes "an 'actual and substantial disadvantage' of 'constitutional dimensions,'" *Snyder*, 871 F.3d at 1128, Mr. Bailey has "demonstrated actual prejudice resulting from the alleged . . . error," and Mr. Bailey's "claim overcomes any procedural default." *United States v. Lewis,* 904 F.3d 867, 870 (10th Cir. 2018).

**III. § 2255 Analysis**

Pursuant to 28 U.S.C. § 2255(a), "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." However, "a collateral challenge may not do service for an appeal" and "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Frady,* 456 U.S. at 165-66.

Mr. Bailey asserts that the court instructed the jury that both completed Hobbs Act Robbery and attempted Hobbs Act Robbery constitute "crimes of violence" and therefore valid predicate offenses under § 924(c), but that only completed Hobbs Act Robbery was a valid predicate offense. The Supreme Court has recognized that "[a] conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (per curium). However, "constitutional errors can be harmless," and therefore the court must apply a harmless error analysis. *Id.* at 60-61; *see also United States v. Driscoll*, 892 F.3d 1127, 1132 (10th Cir. 2018); *United States v. Dago,* 441 F.3d 1238, 1246 (10th Cir. 2006) (harmless error applies in § 2255 proceedings).

"[I]n evaluating convictions on collateral review, the harmless error inquiry 'is whether the error had substantial and injurious effect or influence in determining the jury's verdict.'" *Dago*, 441 F.3d at 1245 (quoting *United States v. Rivera*, 347 F.3d 850, 852 (10th Cir. 2006)); *see also Hedgpeth*, 555 U.S. at 58 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)) ("[A] reviewing court finding such error should ask whether the flaw in the instructions 'had substantial and injurious effect or influence in determining the jury's verdict.'"). The Court has clarified that "[w]hen a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1996); *see also United States v. Ivory,* 861 F. App'x 233, 239 n.6 (10th Cir. 2021) (unpublished) (quoting *Underwood v. Royal*, 894 F.3d 1154, 1175 (10th Cir. 2018)) ("[O]n habeas review, 'constitutional error may be disregarded *unless* found to have had substantial and injurious effect or influence in determining the jury's verdict.'"); *United States v. Arthurs*, 823 F. App'x 692, 696 (10th Cir. 2020) (unpublished).[3]

Having reviewed the trial record in this matter, the court "entertain[s] no doubt, grave or otherwise, as to the effect of the claimed constitutional error; it is harmless." *United States v. Deiter,* 890 F.3d 1203, 1211 n.4 (10th Cir. 2018) (internal citation omitted).

Looking first to the evidence of the April 28, 2015 robbery, Maurice Mabin testified that, on that date, he was working an overnight shift at the Walgreen's Store. [Doc. 59, pp. 25, 52]. Walgreen's is a pharmacy and retailer that sells products that are manufactured across the country.

[3] "Unpublished decisions are not precedential but may be cited for their persuasive value." 10th Cir. R. 32.1(A).

[*Id*. at pp. 31, 67].

While Mr. Mabin was working, a man entered the store holding what appeared to be a shotgun and told Mr. Mabin it was a robbery. [*Id.* at pp. 25-26]. Mr. Mabin took the man to his manager, Kendra James, who opened the safe. [*Id.* at pp. 26-27, 39]. Ms. James testified that she opened the safe out of fear. [*Id.* at pp. 41-42]. At the man's direction and out of fear, Mr. Mabin put the money from the safe in a trash can. [*Id.* at pp. 27-28, 30]. Mr. Mabin then took the man to the front of the store, where Mr. Mabin opened the register and gave the man the money from the register. [*Id.* at pp. 27-28]. The man also asked for four packs of Newport cigarettes, which Mr. Mabin gave him. [*Id.*]. The man then left the store with the money. [*Id.* at p. 28]. The man did not have Walgreen's permission to take the money and, as a result of the money being taken, Walgreen's was unable to buy products to sell again with that money. [*Id.* at p. 29, 42-43].

With respect to the July 20, 2017 robbery, Ms. James testified that she was working at the Walgreen Store by the backdoor when a man came around the tote shed pointing what appeared to be a handgun at her. [*Id.* at p. 45-46, 52]. The man had the same basic build as the person who had previously robbed the Walgreen's Store. [*Id.* at p. 49]. Ms. James testified that the man grabbed her and pushed her to the office, gun at her back. [*Id.* at pp. 45-46]. Ms. James testified that she feared that she would be shot. [*Id.* at pp. 47-48]. Once in the office, Ms. James stated that the man appeared to know the location of the safe. [*Id.* at p. 48]. Ms. James opened the safe, the man grabbed a trash can, and she put the money from the safe in the trash bag. [*Id.* at pp. 47-48]. The man subsequently ran away with the money. [*Id.*]. The man did not have Walgreen's permission to take the money and, as a result of it being taken, Walgreen's could not use that money to buy other products. [*Id.* at pp. 48-49].

Additionally, Tulsa Police Department Detective Chad Moyer testified that, on June 26, 2017, Mr. Bailey, utilizing his Facebook account username Mob Marley, sent Deuce Menace, the Facebook account username associated with Amir Cole, a photo of a small gun with a white grip. [*Id.* at pp. 143-46]. Detective Moyer testified that, based on his review of the surveillance video, he believed that the gun portrayed in the Facebook photo was the same gun used during the July 20, 2017 robbery. [*Id.* at pp. 171-72]. FBI Agent Jamie Cavitt testified that Mr. Bailey's height was consistent with the person who committed the April 2015 and July 2017 robberies. [Doc. 60, pp. 12-13].

Finally, as to the January 6, 2018 robbery, Janet Danley testified that she was working as an overnight cashier at the Walgreen's Store when she saw a man wearing a shiny mask standing in the store. [Doc. 59, pp. 64-65, 68-69]. Ms. Danley identified the government's Exhibit 5 as the mask that the man wore. [*Id.* at p. 71]. Further, Ms. Danley identified the government's Exhibit 6 as the jacket the man was wearing. [*Id.* at pp. 72-74]. The mask and jacket were subsequently found in Mr. Bailey's apartment by law enforcement. [*Id.* at pp. 153-55].

On January 6, 2018, the masked man moved behind Ms. Danley, put his arm around her neck, stuck what she believed to be a gun in her right side, and yelled, "show me the cash." [*Id.* at pp. 68-69, 70-71]. Ms. Danley responded, "I'm not the manager," and then the man dragged her back toward the office door, where Ms. James was working. [*Id.* at pp. 51, 68-69]. Ms. James testified that she was coming out of the office door in the Walgreens Store when she saw Ms. Danley and the man with his arm around her neck coming towards the office. [*Id.* at pp. 51-52]. Ms. James testified that she saw that the man had a small gun that looked like a silver revolver with a white handle. Ms. James feared the gun. [*Id.* at pp. 53-54]. Ms. James went back into

the office, opened the safe, and put the money from the safe in a trash bag. [*Id.* at pp. 51-52]. Ms. James said that the man then followed her out onto the floor and took off running with the money. [*Id.* at p. 52]. Walgreen's did not give the man permission to take the money and, as a result, Walgreen's could not use that money to buy other products for the store. [*Id.* at pp. 54-55].

Ms. James stated the man was taller than the man who had previously robbed the store. [*Id.* at p. 54]. Agent Cavitt testified that Mr. Cole's height was consistent with the description of the person who committed the January 2018 robbery. [Doc. 60, pp. 12-13].

Of most significance to this court, in post-*Miranda* statements, Mr. Bailey admitted to committing the robberies charged in the Indictment. [Doc. 59, pp. 187-88; Doc. 60, pp. 8, 15, 22-23]. Specifically, Mr. Bailey stated that he had chosen the Walgreen's Store because he "had found an access point that gave him easy access." [Doc. 59, p. 179]. When questioned as to why he used the trash can to take the money, he responded, "[t]he store's full of bags. Why bring your own bag?" [*Id.* at pp. 180-81]. He then described to Agent Cavitt what happened during the robberies, stating: "I would be at the scene checking for cars. I'd pray, go in, not run, but fast-walk, grab the first person I see, find that person I need, and then have them walk me to the back. I mean, you all saw the [Walgreen's surveillance] video." [*Id.* at pp. 182-83]. Mr. Bailey stated that he used disguises and then he would get rid of the disguises "where they would never be found," except for the mask. [*Id.* at p. 187; Doc. 60, pp. 3-4].

Mr. Bailey further informed investigators that he did not take money from the cash register or Newport cigarettes in the robberies following the April 2015 robbery because "it's petty, too much time in the store." [Doc. 59 at pp. 184-85]. He further described the shotgun used during

the April 2015 robbery. [*Id.* at 185].

Mr. Bailey also admitted to Detective Moyer that, on the night of January 6, 2018, he picked up Mr. Cole, drove him to the Walgreens Store, and parked in a nearby neighborhood. Mr. Bailey stated that he gave Mr. Cole the mask and a gun, instructed him as to where things were in the store, and told him to be "in and out in a minute." [*Id.* at pp. 164-65]. Mr. Bailey stated that he received "a couple hundred dollars" for the January 6, 2018 robbery. [*Id.* at p. 187]. In his post-*Miranda* statement to investigators, Mr. Bailey conceded that he "should have never done that s*** with Menace [Mr. Cole]." [Doc. 60, p. 12].

Based on the foregoing, the court has no doubt that a rational jury could have found, beyond a reasonable doubt, that Mr. Bailey completed the April 28, 2015, July 20, 2017, and January 6, 2018 Hobbs Act Robberies as charged in the Indictment.[4] Specifically, with respect to each robbery, there was extensive testimony or evidence that Mr. Bailey obtained money from Walgreen's without Walgreen's consent, or aided and abetted Mr. Cole in obtaining money from Walgreen's without Walgreen's consent; that he did so by wrongful use of threatened force, violence, or fear in using what appeared to be firearms; and that, as a result of Mr. Bailey's actions, interstate commerce was potentially affected as Walgreen's could not purchase items for resale with that money. *See* 18 U.S.C. § 1951(a). Completed Hobbs Act Robbery is a "crime of violence," and, therefore, a valid predicate offense under § 924(c). *United States v. Baker*, 49

[4] The court acknowledges that Mr. Bailey's conviction as to Count Nine was premised on aider-abettor liability. Although it does not appear that the Tenth Circuit has considered the issue, other Circuits have uniformly "rejected the argument that *Taylor* called into question the viability of § 924(c) violations or convictions predicated on aiding and abetting crimes of violence." *Medunjanin v. United States*, 99 F.4th 129, 135-36 (2d Cir. 2024) (collecting cases). Regardless, Mr. Bailey has not raised this issue.

F.4th 1348 (10th Cir. 2022); *United States v. Melgar-Cabrera*, 892 F.3d 1053 (10th Cir. 2018). Thus, the claimed error had no "substantial and injurious effect or influence in determining the jury's verdict,'" *Dago*, 441 F.3d at 1245, and the error is harmless. *Hedgpeth*, 555 U.S. at 58; *O'Neal*, 513 U.S. at 436. Because the constitutional error was harmless, habeas relief is not warranted and Mr. Bailey's motion is denied.[5]

**IV. Certificate of Appealability**

Rule 11 of the *Rules Governing Section 2255 Cases in the United States District Courts* instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicate[s] which specific issue or issues satisfy [that] showing." 28 U.S.C. § 2253(c)(3). That standard demands that the issues raised be debatable among reasonable jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the court denies a certificate of appealability as the record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issue in this case differently.

---

[5] Although not dispositive, the court notes that other Circuit Courts of Appeal have applied similar analyses to § 924(c) convictions under a general verdict form where one of the offered predicate offenses was invalid. *See Stone v. United States,* 37 F.4th 825, 831 (2d Cir. 2022) ("[I]n the context of a § 924(c) conviction, where a jury's finding of guilt is based on two predicates, only one of which can lawfully sustain guilt, we will find the error harmless when the jury would have found 'the essential elements of guilt on the alternative charged predicate that would sustain a lawful conviction' beyond a reasonable doubt."); *Garrison v. United States*, 73 F.4th 1354, 1362 (11th Cir. 2023) (formatting altered from original) (rejecting habeas claims where "there was no real possibility that [defendant's] §§ 924(o) and 924(c) convictions rested solely on the invalid Hobbs Act . . . predicate"); *Nicholson v. United States,* 78 F.4th 870, 883-84 (6th Cir. 2023).

## V. Conclusion

WHEREFORE, the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 70] of defendant/petitioner Melvin Louis Bailey, III is denied as to Mr. Bailey's second grounds for relief.

IT IS FURTHER ORDERED that Mr. Bailey's Amended Motion to Vacate, Set Aside, or Correct a Sentence Under 28 U.S.C. § 2255 [Doc. 104] is denied.

IT IS FURTHER ORDERED that the Motion to Dismiss Defendant's Untimely § 2255 Motion [Doc. 74] of plaintiff United States of America, as to Mr. Bailey's second ground for relief, is moot.

IT IS FURTHER ORDERED that the court denies a certificate of appealability because Mr. Bailey has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Rule 11(a), Rules Governing Section 2255 Proceedings.

IT IS SO ORDERED this 18th day of February, 2025.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE